## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TWILA GAYE MCDANIEL,        )
                                       )
           **Plaintiff,**        )
                                       )    **CIVIL ACTION**
**v.**                              )
                                       )    **No. 14-1182-JWL**
**CAROLYN W. COLVIN,**        )
**Acting Commissioner of Social Security,**  )
                                       )
           **Defendant.**      )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security
(hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections
216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the
Act).  Finding error in the Commissioner's evaluation of Plaintiff's Raynaud's
phenomenon[1], the court ORDERS that the decision shall be REVERSED and that
judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)
REMANDING the case for further proceedings consistent with this decision.

---

[1]Plaintiff's Brief uses the term "Reynaud's condition" (Pl. Br. 5 ff.) and the
Commissioner's Brief uses "Raynaud's Syndrome."  (Comm'r Br. 3-6, passim).  The court will
use the term "Raynaud's phenomenon" as suggested by Dr. Shaver (R. 341), and used in certain
medical discussions.  Available at
http://www.webmd.com/arthritis/tc/raynauds-phenomenon-topic-overview (last visited Sept. 15,
2015); http://www.nlm.nih.gov/medlineplus/raynaudsdisease.html ("Raynaud's Disease  Also
called:  Raynaud's Phenomenon.") (last visited Sept. 15, 2015).

I.      **Background**

Plaintiff applied for DIB, alleging disability beginning February 15, 2009.  (R. 27, 165).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff argues that the Administrative Law Judge (ALJ) erred at step two of his consideration, and in considering the opinions and diagnoses of her former rheumatologist, Dr. Shaver.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

2

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ did not properly explain her evaluation of Raynaud's phenomenon in this case.  She did not explain whether it is a medically determinable impairment in the circumstances of this case, did not explain why she did not find it to be a severe impairment, and did not explain the limitations in Plaintiff's functioning, if any, that are a result of it.  Because remand is necessary for a proper evaluation of Raynaud's phenomenon, and in the interest of judicial economy, the court will not provide an advisory opinion on the other errors alleged in Plaintiff's Brief.  She may make her arguments in that regard to the Commissioner on remand.

## II.   Discussion

Plaintiff notes that the ALJ assessed Plaintiff with the RFC to tolerate frequent exposure to extreme cold, and argues that "[s]uch exposure would be harmful to Plaintiff" because of Raynaud's phenomenon.  (Pl. Br. 30).  Plaintiff admits that the ALJ proposed one hypothetical scenario assuming no exposure to extreme cold, and that the vocational expert testified that certain sedentary work such as polisher, document preparer, and hand mounter would be available to such a hypothetical individual.  (Pl. Br. 30).  But, she

argues that the ALJ did not ask whether light work would be available to an individual who could tolerate no exposure to extreme cold.  Id.  And she argues that the ALJ "cherry picked" this finding to apply it to sedentary work but not light work.  Id. at 31.  She argues that Raynaud's phenomenon imposes significant restrictions on Plaintiff's abilities, but that the ALJ did not consider these restrictions or apply them in the RFC assessed.  Id. at 32.  In her final argument, Plaintiff suggests that the ALJ failed to assign any weight to Dr. Shaver's medical opinions.

The Commissioner tacitly admits that the ALJ said nothing in the decision regarding Raynaud's phenomenon, but suggests that the record evidence does not support a finding of functional limitations related to Raynaud's phenomenon.  (Comm'r Br. 5-6).  She argues that any error in failing to include such limitations in the RFC assessed is harmless because Plaintiff admits that the vocational expert testified that sedentary work is available to an individual who is unable to tolerate extreme cold.  Id. at 6-7.

As both parties admit, the ALJ said nothing in the decision regarding Raynaud's phenomenon.  She did not discuss Raynaud's phenomenon in her step two discussion wherein she found that Plaintiff has severe impairments of fibromyalgia, joint arthralgias, arthritis, status post knee arthroscopy, depression, and chronic opioid use; and wherein she found that ankylosing spondylitis is not medically determinable on the record in this case.

Thus, there is little evidence in the decision that the ALJ even considered whether Raynaud's phenomenon is medically determinable in the circumstances.  To be sure, the

ALJ's RFC contains a limitation to frequent--rather than constant--exposure to extreme heat and cold, but there is no discussion of the basis for this limitation.  If one assumes that the basis is Plaintiff's allegation of Raynaud's phenomenon, then there is no basis for the limitation regarding extreme heat.  Moreover, if one assumes that the basis is Raynaud's phenomenon, one is left without an explanation for the limitation to frequent exposure, rather than to occasional exposure, or to no exposure.  This is despite Plaintiff's testimony that her hands get numb frequently, that she has Raynaud's phenomenon, that it has caused lesions on her fingers that looked like someone had split them with a razor blade, and that her doctor thought she had frostbite.  (R. 57-58).

The Commissioner acknowledges that the ALJ did not discuss Raynaud's phenomenon, and explains how in her view the record evidence supports only one limitation resulting therefrom--only frequent exposure to temperature extremes--which is consistent with the ALJ's RFC assessment.  But, she does not attempt to explain the limitation to only frequent exposure to extreme heat.  More importantly, the Commissioner ignores the fact that an ALJ's decision should be evaluated based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  As

6

explained above, the decision at issue does not make apparent how, or even if, the evidence regarding Raynaud's phenomenon was treated.

The Commissioner's argument that any error in failing to consider Raynaud's phenomenon properly is harmless, fairs no better.  As the Commissioner argues, and Plaintiff admits, the vocational expert testified that sedentary jobs are available to an individual who can handle no exposure to cold environments.  However, as the ALJ found, Plaintiff was born on December 1, 1960.  (R. 36).  She became 50 years old on December 1, 2010, more than two years before the decision was issued on February 13, 2013.  The regulations recognize that individuals over 50 years of age "may be significantly limited in vocational adaptability if they are restricted to sedentary work." 20 C.F.R., Pt. 404, Subpt. P, App. 2 § 201.00(g).  Therefore, the error in failing to consider Raynaud's phenomenon properly is not harmless in this case, because even if one assumes that sedentary work is available, the ALJ did not discuss this significant limitation in vocational adaptability, or the fact that if a claimant such as Plaintiff is over 50 years of age, is limited to sedentary work, and her past work experience is unskilled or any skills are not transferable, she will usually be determined to be disabled in accordance with the Medical-Vocational Guidelines.  20 C.F.R., Pt. 404, Subpt. P, App. 2 §§ 201.09, 201.10, 201.12, 201.14.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 22nd day of September 2015, at Kansas City, Kansas.


                                              <u>s:/ John W. Lungstrum</u>
                                              **John W. Lungstrum**
                                              **United States District Judge**